**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| SHEILA BENSON, | : | Civil Action No: 3:11-cv-4629 |
| Plaintiff, | : | **OPINION** |
| v. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |
| _____ | : | |

**WOLFSON, United States District Judge**:

This lawsuit involves a denied application for disability benefits. In this Opinion, the Court determines whether to affirm, modify or reverse the decision of the Administrate Law Judge ("ALJ"). Plaintiff Sheila Benson ("Plaintiff", "Benson", or "claimant") argues that the ALJ deprived the plaintiff of a full and fair hearing, relied upon stale evidence, erroneously concluded that the plaintiff could perform her past relevant work and failed to adequately evaluate an expert's opinion. For the reasons stated below, the Court denies Plaintiff's appeal and the decision of the ALJ is AFFIRMED.

**I.   BACKGROUND**

   **A.   Factual Background**

In this section, I provide an overview of Benson's medical history.  More detailed descriptions of her medical and testimonial record are provided herein, where relevant.

Benson worked as an elementary school teacher in Margate City, New Jersey from 1992 to 2003. In July 2000, Dr. Courtland Schmidt first diagnosed Plaintiff with advanced glaucoma in her left eye. Administrative Record ("AR") at 249. Following her eye-related diagnosis, Benson also developed hypertension and depression. AR at 42.   Dr. Schmidt performed

1

Plaintiff's first eye surgery on August 9, 2000, and performed additional procedures in May 2001 and July 2001. AR at 234 - 236. Benson continued to receive treatment from Dr. Schmidt until 2004.

In 2004, she relocated to Hillsborough, New Jersey, where she entered the care of Dr. Omar Mobin-Uddin for her glaucoma. AR at 411. Plaintiff also began a part-time job at a Kohl's department store. She chose not to seek a teaching position at that time, due to her visual, bending and lifting difficulties. However, the severity of her difficulties soon resulted in her departure from Kohl's and she alleges in her disability application that she officially became disabled on January 2, 2005. Approximately a year later, in April 2006, Dr. Janice A. Hallit became the first physician to prescribe stress and depression medication to Benson. AR at 321.

Plaintiff underwent a number of evaluations and operations in the latter half of 2007. In an adult function report dated July 5, 2007, Benson indicated that she had to reduce her leisurely activities due to the aggravation of her physical and mental ailments. AR at 153. On August 14, 2007, Dr. Anna Marie Resnikoff examined Plaintiff's functional ability. Resnikoff noted that Benson had at least low average intelligence, had borderline organization and retrieval skills of learned material and had average vocabulary skills and conceptual understanding. AR at 250 - 253. In short, Resinkoff diagnosed Plaintiff with concurrent adjustment disorder and depressed and anxious mood. She, further, assigned Benson a Global Assessment of Functioning ("GAF") score of 75-85, which is equivalent to that of a highly-functional person. AR at 12.

Roughly a month later, in July 2007, State Agency Physician Dr. Carol Bruskin evaluated Benson's mental impairment under the 12.04 - Affective Disorders - and 12.06 - Anxiety Related Disorders rubric. Dr. Bruskin also diagnosed Benson with an adjustment disorder with depressed and anxious mood. These disorders, Dr. Bruskin concluded, caused Benson to suffer a mild

restriction of daily living activities, mild difficulties in social functioning, and moderate difficulties in maintaining concentration. AR at 271. However, the doctor concluded that Plaintiff did *not* experience any decompensation episodes. With respect to Benson's Mental Residual Functional Capacity ("RFC"), Dr. Bruskin determined that Plaintiff's mental impairment resulted in a moderate limitation to: 1) understand and remember detailed instructions, 2) carry out detailed instructions, 3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, 4) accept instructions and respond appropriately to criticism from supervisors, 5) respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation. AR at 275. Furthermore, the Plaintiff could understand, remember and execute responsibilities associated with the work environment, relate to others, accept criticism from authority, cope with stress and change with mild to moderate interference from psychiatric symptoms. AR at 277. Overall, Dr. Bruskin described the examination as normal. AR at 277.

At the request of the Division of Disability Determination Services, Dr. John M. Boozan performed a consultative examination on October 3, 2007. He noted the need for left cataract surgery and that Benson had well controlled glaucoma in both eyes. AR at 295. Following this examination, an October 18, 2007 physical RFC assessment yielded a result of no exertional limitations due to the impairment of her eyes. The assessor determined that Benson's limitations precluded her from working at unprotected heights but that she could handle both large and small objects and could avoid the normal hazards of the workplace. AR at 304. Dr. Mobin-Uddin completed cataract surgeries on Benson's eye in November 2007. AR at 361.

In 2008, Dr. Mobin-Uddin recommended Plaintiff to receive another type of surgery from Dr. John Park—corneal transplant. Over the next year and a half she received two surgeries from Dr. Park. AR at 441. Following these surgeries, that took place on October 1, 2008, AR at 372, and January 7, 2009, *id.* at 366, Benson was again evaluated by Dr. Park. He states in his September 14, 2010 report that, as of his September 9, 2010 evaluation of her, the cornea transplant appeared to be failing and that "she was describing fluctuating left ocular burning and pain with varying intensity." AR at 441. According to Dr. Park, her left visual acuity, at that time, was 20/300 with left exotropia. *Id.* In his view, her poor vision made it "very difficult [for her] to engage in any activity or work in a meaningful fashion." *Id.* He found her claims of pain to be consistent with those of most persons experiencing failed corneal transplant. *Id.*

**B.     Procedural Background**

Plaintiff applied for Social Security Disability benefits on June 4, 2007. She alleged an inability to work due to glaucoma, hypertension and depression. Though a claims adjudicator found that Benson's moderate psychiatric impairment precluded her from returning to teaching, the adjudicator concluded that Rule 204.00 compelled a finding of not disabled. *See* 20 C.F.R. § 404 App. 2 Rule 204.00 (stating that an impairment that does not preclude heavy work generally is sufficient for a finding of not disabled.) Thus, the adjudicator denied the claim on October 18, 2007.

Plaintiff requested reconsideration of the claim adjudicator's decision, and updated her disability form with additional information about her medical conditions. Disability Determination Services initially affirmed the denial on April 1, 2008. Plaintiff then requested a hearing on May 29, 2008 and submitted another updated form in support. The Commissioner granted her request and scheduled the hearing for September 17, 2009. Following the hearing,

4

the ALJ found that Benson was not disabled and could perform her past relevant work through March 31, 2009, the date last insured. He found that Benson did not engage in substantial gainful activity since the onset date of January 2, 2005, her left-eye blindness was a severe impairment and her depression was a non-severe impairment. However, he also found that she had the RFC to perform exertional demands of light work with limitations and could perform her past relevant work.

Plaintiff then successfully appealed the ALJ's decision to the Appeals Council. In a June 2010 decision, the Council vacated and remanded the case because the ALJ did not consider Dr. Carol Bruskin's opinion while evaluating plaintiff's mental state and because the ALJ should have evaluated the claimant's mental impairment using the procedure set out in 20 CFR 404.1520a. *See* AR at 103. With respect to Dr. Bruskin's report, the council held that the ALJ failed to explain the weight he assigned to her opinion. Because Dr. Bruskin is a State agency physician, the ALJ was required to address her opinion although he was not bound to adopt it. *Id.* As for the ALJ's severity determination, the Appeals Council held that the ALJ did "not address the "B" or "C" criteria ratings [found in 20 C.F.R. 404.1520a] or provide any of the requisite rationale needed to evaluate the severity of the claimant's mental impairment." *Id.* Having remanded for these reasons, the council further instructed the ALJ to give additional consideration to his RFC determination and, "[i]f warranted[,] . . . obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base …." *Id.* at 104.

On remand, a record hearing was set for October 12, 2010. In advance of the rehearing, Plaintiff submitted additional documentation from Dr. John C. Park describing her injuries and his assessment of her condition. After further questioning Benson about her depression and

5

recent left-eye developments, the ALJ affirmed his previous decision on the same grounds in a decision dated October 14, 2010. In particular, he determined that the psychological evidence failed to establish anything greater than a minimal effect on her ability to perform basic work activities. He, further, addressed the deficiencies highlighted by the Appeals Council's remand. Benson, again, appealed but, this time, the Appeals Council denied her request for review on June 17, 2010. Thereafter, Plaintiff appealed to this Court.

### C. ALJ's Opinion

In denying Benson's re-application for disability benefits in his October 14, 2010 opinion, the ALJ set followed the five step procedure for determining whether an individual is disabled for the purposes of the Social Security Act. He then made six findings:

> (1) The claimant last met the insured status requirements of the Social Security Act on March 31, 2009. AR at 11.
>
> (2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 2, 2005 through her date last insured of March 31, 2009. AR at 11.
>
> (3) Through the date last insured, the claimant had severe impairments involving left-eye blindness with the residual effects of cataract and corneal transplant surgeries. The claimant also has a non-severe impairment: depression. AR at 11.
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR at 13.
>
> 5) The claimant's residual function capacity has been for lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; not requiring binocular vision or exposure to heights or dangerous machinery. AR at 13.
>
> 6) Through the date last insured, the claimant was capable of performing past relevant work as a teacher. This work did not

>require the performance of work-related activities precluded by the
>claimant's residual functional capacity. AR at 17.

Ultimately, the ALJ determined that the "claimant was not under a disability, as defined in the Social Security Act, at any time from January 2, 2005, the alleged onset date, through March 31, 2009, the date last insured." AR at 18. In reaching this conclusion, the ALJ relied heavily upon the September 4, 2007 report by Dr. Bruskin.  Furthermore, the ALJ considered Dr. Park's September 2010 report irrelevant because it was dated approximately a year after the date last insured and addressed Plaintiff's condition following the March 31, 2009 date of last insured. He reasoned that the Plaintiff had the burden to prove that she became disabled on or prior to March 31, 2009, and Dr. Park's 2010 letter would not aid in that determination.    *Id.* at 17.

## II.    STANDARD OF REVIEW

### A.    Substantial Evidence

When reviewing the final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *See Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of law are reviewed de novo (*Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986) and questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *See Knepp v. Apfel,* 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings have support by such evidence, *Gober v. Matthews,* 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but

less than a preponderance. *McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the fact-finder." *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that could justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler,* 807 F.2d 54, 58 (3d Cir. 1986).

  **B.**  **Five Step Process**

The Social Security Act establishes a five-step sequential process by which the ALJ is to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ determines whether the claimant has shown that he or she currently does not engage in "substantial gainful activity." 20 C.F.R. § 404.1520(a); *See Bowen v. Yuckert,* 482 U.S. 137, 146–47 n. 5 (1987). The term has two aspects. The first—substantial work activity—"is work activity that involves doing significant physical or mental activities." AR at 10. *See* 20 CFR 404.1572(a). The second—gainful work activity—"is work that is usually done for pay or profit, whether or not the profit is realized". AR at 10. *See* 20 CFR 404.1572(b). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *See also Bowen,* 482 U.S. at 140. If not, the analysis proceeds to Step Two.

At Step Two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *See Bowen,* 482 U.S. at 146–7 n. 5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20

C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have at least one severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *See Plummer,* 186 F.3d at 428. If the applicant does have at least one impairment, the analysis continues to Step Three.

At Step Three, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or equals the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairment is on the Impairment List the claimant has satisfied his or her burden of proof and is entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen,* 482 U.S. at 146–47 n. 5. If the specific impairment is not listed, the ALJ will attempt to identify a medically equivalent impairment. *See* 20 C.F.R. § 404.1526(a). A medically equivalent impairment also leads to benefits. If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams,* 970 F.2d at 1186. If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, Step Three is not satisfied. The analysis then proceeds to Step Four.

At Step Four, the claimant bears the burden of proving whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen,* 482 U.S. at 141. If the claimant is able to perform her previous work, the claimant is determined to not be disabled. 20 C.F.R. § § 404.1520(e), 416.920(e); *Bowen,* 482 U.S. at 141–42. If the applicant cannot, then the analysis proceeds to Step Five.

If it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner. The Commissioner must show at Step Five, that the "claimant is able to perform work available in the national economy." *Bowen,* 482 U.S. at 146 –47 n. 5; *Plummer,* 186 F.3d at 428. This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

### III.   DISCUSSION

As a threshold matter, the Court clarifies the dates during which plaintiff must demonstrate that she was disabled. In order to receive disability benefits, a claimant must fulfill four requirements. *See* 42 U.S.C. § 423(a). The ALJ determined, and the plaintiff does not contest, that the date she was last insured was March 31, 2009. *See Fargnoli v. Massanari*, 247 F.3d 34, 36 (3d Cir. 2001) (referring to the final date of coverage as the "date last insured.") As the Third Circuit case law makes clear, the date last insured dictates the operative period of disability. *See Massaro v. Comm'r of Soc. Sec.*, 84 F. App'x 175, 179 (3d Cir. 2003) ("[U]nfortunately for Massaro, the medical reports did not indicate that she was disabled before [the date last insured.]"); *De Nafo v. Finch,* 436 F.2d 737, 739 (3d Cir. 1971) ("Therefore, his physical condition subsequent to the  ... [date last insured is] not relevant to the issue."). Thus, the plaintiff must prove that she was disabled on or before March 31, 2009.  With that clarification I mind, I now turn to Plaintiff's arguments.

Plaintiff asserts that the ALJ erred for several reasons: 1) the plaintiff was deprived of her right to a full and fair hearing, 2) the ALJ relied upon stale evidence when determining plaintiff's depression was a non-severe impairment, 3) the ALJ's finding that the plaintiff was able to

perform her past relevant work is erroneous, and 4) the ALJ failed to adequately consider Dr. John C. Park's evaluation.  For the following reasons, I conclude that each of Plaintiff's challenges fail.

### A. Full and Fair Hearing

Despite plaintiff's arguments to the contrary, the record reveals that the ALJ provided Benson a full and fair hearing. As *Ventura v. Shalala,* 55 F.3d 900 (3d Cir. 1995) explains, "due process requires that any hearing afforded [to a Social Security disability] claimant be full and fair." *Id.* at 902. A hearing is not considered full and fair when "a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her claim, or where the ALJ exhibits bias or animus against the claimant." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857-58 (3d Cir. 2007). Plaintiff argues that the ALJ deprived her of a full and fair hearing by not questioning her about (a) her pain, (b) the extent of her depression, (c) about the side effects of her medication, and (d) her past relevant work.

The Court notes at the outset that the ALJ did actually elicit testimony about the extent of Benson's depression.  At the initial September 2009 ALJ hearing, Benson's counsel elicited testimony from her about her condition.  He asked her how depression affected her daily life and she testified that it was difficult for her "to get through the day, and [sic] do things."  AR at 44. At the October 2010 ALJ hearing, which is the subject of the instant appeal, the ALJ further inquired, asking if she "had any mental treatment for any mental impairment since . . . September 2009 …." *Id.* at 23.  She responded that she was receiving "[t]he same treatment that [she] was undergoing at that time," namely, medication (Wellbutrin and Valium) through her primary care doctor—Dr. Park. *Id.*  To that response, the ALJ queried whether she sought further treatment from a psychiatrist or a psychologist.  After initially refusing to answer the ALJ's question,

11

Benson ultimately stated that she did not seek such treatment because she is comfortable receiving treatment from her primary care physician and was overwhelmed at the thought of being referred to a psychiatrist or a psychologist. *See id.* at 24.

That the ALJ elicited the mental impairment testimony from Benson makes clear that he afforded her a full and fair hearing on this issue. A claimant is denied a full and fair hearing where, for example, an ALJ acts abusive and intimidating, or otherwise interferes with the claimant's presentation of evidence supporting her claim. *See Ventura*, 55 F.3d at 902-03. Here, in contrast to such a circumstance, the ALJ attempted to elicit further details from Benson about her mental impairment medical history. While this Court cannot discern the ALJ's demeanor from the written record, there is nothing in the record to indicate that the ALJ acted harshly toward Benson or that he somehow interfered with her ability to present further evidence about her impairment. Therefore, Plaintiff's full and fair hearing challenge regarding her mental impairment cannot stand.

Benson's assertions that the ALJ failed to question her about her pain, the side effects of her medication[1], and her past relevant work likewise fail. While it is true that the ALJ did not question Benson about any of these topics, his failure to do so did not render the hearing unfair. His omission cannot be described as "coercive and intimidating" or some sort of proof of animus towards her. *Shalala*, 55 F.3d at 903. If Benson wished to have evidence of these impairments considered, it was her burden to introduce that evidence. *See* 20 C.F.R. § 404.1512(a) (claimant bears the burden of proving her disability).

---

[1] While Plaintiff cites to *Stewart v. Secretary of Health, Educ. and Welfare of U.S.*, 714 F.2d 287 (3d Cir. 1983), that case does not speak to whether an ALJ must elicit testimony sbout medication side effects from a claimant. Rather, it addresses an ALJ's rejection of side effect testimony without adequately explaining his grounds for rejection. *Id.* at 290.

### B. Stale Evidence

Benson next argues that the ALJ relied solely on the July 2007 reports of Drs. Resinkoof and Bruskin, contending that these medical opinions were "stale" and not reflective of her condition through March 31, 2009. Plaintiff, specifically, points to the following pages in the record as revealing evidence that the ALJ ignored—AR 170, 173, 175, 200, and 203. Upon review of these pages, they refer solely to Plaintiff's subjective complaints on her disability appeal form. *See* AR at 170 (describing her November 2007 eye surgery complications, her need for additional anxiety and blood pressure medication as a result of the "added stress" from her surgery); *id.* at 171, 203 (subjective side effect complaints); *id.* at 175 (description of how her daily routine has been adversely affected); *id.* at 200 (noting that she may require cornea surgery, that she continues to suffer fatigue, and that her November 2007 surgery was stressful). Plaintiff's failure to point to medical evidence in the record to support the subjective complaints stated in her application is reason alone to deny this challenge; it is not the Court's obligation to search through the record to find support for her contentions. Nevertheless, I address what Plaintiff appears to be attempting to argue—that the ALJ should have garnered further evidence of her mental impairment.

As explained above, the ALJ determined that the claimant's glaucoma was a severe impairment while her depression was a non-severe impairment. The statute defines a non-severe impairment as an "impairment or combination of impairments .... [that] does not significantly limit ... [the] physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). The act further defines basic activities as "abilities and aptitudes necessary to do most jobs." *Id.* at (b). Examples of this are: "[c]apacities for walking, seeing and hearing", "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling",

"[u]nderstanding, carrying out, and remembering simple instructions", "[u]se of judgment", "[r]esponding appropriately to supervision, co-workers and usual work situations" and "[d]ealing with changes in a routine work setting." *Id*. Thus, if an impairment does significantly limit a claimant's ability to do basic work activities, then it is severe. *See* 20 C.F.R. § 404.1520(c).

A special procedure applies to mental impairments. To properly assess a potential mental impairment, the ALJ "must first evaluate ... [the applicant's] pertinent symptoms, signs, and laboratory findings to determine whether" a medically determinable mental impairment exists." 20 CFR § 404.1520a(b)(1). If a mental impairment exists, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document ... [his or her] findings." *Id*. To rate the degree of the limitation, the ALJ should make an individual determination using "all relevant and available clinical signs and laboratory findings, the effects of ... symptoms, and how ... functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id*. at (c)(2).

Moreover, the ALJ must "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the applicant] file[s his or her] application." 20 C.F.R. § 404.1512(d). Where there is evidence of a mental impairment, the "ALJ has a duty to develop the record ... by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." *Plummer v. Apfel,* 186 F.3d 422, 434 (3d. Cir. 1999). Also, the "Third Circuit has found that new evidence that post-dates the end of disability status may allow the ALJ to consider the period of disability in a different light, and could be directly relevant to the determination of an individual's disability status." *Tommas v. Astrue*, Civ. A. 10-2495 CCC, 2011 WL 5599699 at *6 (D.N.J. Nov. 16, 2011) (internal citation omitted). *See also Stewart v.*

*Sec'y of Health, Educ. & Welfare of U.S.*, 714 F.2d 287, 291 (3d Cir. 1983) ("We leave to the district court a determination of whether the evidence is material, either directly, as an independent basis for establishing [a previous] ... condition ... or indirectly, as a factor to be considered in weighing the various opinions and testimony offered."). However, any piece of evidence that exclusively attempts to prove a disability developed or worsened after the date last insured is irrelevant. *Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 197 (3d Cir. 2007); *see also De Nafo,* 436 F.2d at 739.

Upon review of the ALJ's decision, I conclude that the ALJ fulfilled his statutory evidentiary obligation. Benson filed for benefits on June 4, 2007. Thus, the ALJ should have acquired evidence dating back to June 4, 2006. *See* 20 C.F.R. § 404.1512(d).  The ALJ exceeded this threshold by including evidence from 2000 (AR at 248) until 2010. AR at 441.  Furthermore, the ALJ satisfied the special procedures applicable to mental impairments. During the initial September 2009 hearing, the ALJ questioned the Plaintiff as to the history of her depression and took testimony on the state of her depression. AR at. 42 - 43; *Id.* at 43. ("Between the Wellbutrin and the anxiety medications, on a day to day basis they are helping keep me [sic] on an even keel.") In the October 2010 hearing, the ALJ further inquired into the present state of her depression and elicited answers concerning its effects on her life. AR at 24.

To respond directly to plaintiff's contention that the ALJ should have ordered a new mental health examination, the Court disagrees. The Plaintiff alleges that her depression worsens as her glaucoma worsens. AR at 200. The record also establishes that her glaucoma has advanced. AR at 441. However, that her mental state may have gradually deteriorated since the date last insured, does not alter my analysis. Any evidence related to her condition after March 31, 2009 is irrelevant. *Ortega*, 232 F. App'x at 197; *Massaro,* 84 F. App'x at 179; *De Nafo,* 436

15

F.2d at 739. Accordingly, I conclude that the ALJ did not erroneously rely on stale evidence as Plaintiff suggests.

**C.     Vocational Expert**

As noted, the ALJ denied Plaintiff's claim at Step Four, reasoning that she could perform her past relevant work as a teacher. The ALJ relied on Benson's testimony and the Dictionary of Occupational Titles, which defines teaching as work that requires light exertional strength. Plaintiff argues that the ALJ's reliance on the dictionary is inappropriate and that, instead, the ALJ should have called upon a vocational expert.

Plaintiff relies on a variety of cases to support her vocational expert assertion. The first is *Poulos v. Comm'r of Soc. Sec. Admin.,* 474 F.3d 88, 93 (3d Cir. 2007). In *Poulos*, the Third Circuit remanded because the ALJ relied on the Medical-Vocational Guidelines exclusively "in the presence of Appellant's nonexertional limitations." *Id.* at 92. However, the circuit deemed it to an error at Step *Five* in the five-step social security reasoning process—not at Step Four, like the ALJ did here. *Id.* at 93-94 ("We agree with Appellant that the ALJ erred" "in step five by using the Guidelines to find that Appellant was not disabled.") This is a critical distinction because, at Step Five, the burden of proof has shifted to the Commissioner whereas, at Step Four, the burden remains on the claimant. *Id.* at 92. *See also Smith v. Commissioner of Social Sec.,* 631 F.3d 632, 634 (3d Cir. 2003) ("The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five.") Plaintiff further relies on *Sykes v. Apfel*, 228 F.3d 259, 267 (3d Cir. 2000), a case in which the Third Circuit remanded where the ALJ relied "exclusively on the grids when the claimant has both exertional and nonexertional impairments." *Id* at 266. Once again, this was only deemed to be an error at Step Five in the analytical process.

Here, unlike in *Poulos* and *Sykes*, the ALJ never arrived at Step Five. The ALJ found that the plaintiff did not carry her burden at Step Four and concluded his analysis. *See* A.R. at 17 - 18. The other district court cases Benson cites in support of her vocational expert demand are distinguishable on the same basis. *See Billngsley v. Comm'r of Soc. Sec.*, Civ. A. 08-1912 (WJM), 2009 WL 3128436 at *4-5 (D.N.J. Sept. 25, 2009) (consulting solely the guidelines at step five is a reversible error when at least one non-exertional impairment exists); *Witkowski v. Astrue*, Civ. A. 09-1672 (DMC), 2010 WL 2287560 at *10 (D.N.J. June 3, 2010) (same); *McGill v. Comm'r of Soc. Sec.*, Civ. A. 09-3217 (WJM), 2010 WL 132635 at *2 (D.N.J. Jan. 13, 2010) (same).

More to the point, the Third Circuit has held that "[a]t step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ." *Lopez v. Commissioner of Social Sec.*, 270 Fed.Appx. 119, 123 (3d Cir. 2008) (affirming ALJ's reliance on Dictionary of Occupational Titles that listed her former position as light work). *See* 20 C.F.R. § 404.1560(b)(2) (2003) ("We *may* use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" ….") (emphasis added).[2] As concisely explained in *Torres*, a recent district court decision,

> vocational experts are only used as part of a step five analysis when the ALJ must determine if Plaintiff can hold any job in the national economy. In contrast, the determination of a plaintiff's RFC occurs at step four, and does not require the use of such guidelines or experts.

*Torres v. Commissioner of Social Sec.*, Civil Action No. 10–4623, 2011 WL 6306593, *6 (D.N.J. Dec. 14, 2011) (internal citations omitted).  Accordingly, Plaintiff's citations do not suggest that the ALJ's decision should be remanded or reversed.

---

[2]  This regulation was recently amended this year, hence I quote from the text in effect at the time of the ALJ's 2010 decision.

In addition, when the Appeals Council directed the ALJ to consider whether to utilize a vocational expert in connection with his RFC determination on remand, *see discussion at p. 5 infra,* the council stated that he need utilize an expert only "if warranted." AR at 104. I hold that the ALJ's decision to forego utilizing a vocational expert was not in error. In determining the exertional level of Plaintiff's past relevant work as an elementary teacher, the ALJ was entitled to rely on the Dictionary of Occupational Titles, s*ee* 20 C.F.R. §§ 404.1560(b)(2), 404.1566(d)(1), 404.1567, which lists the position of teacher as light work, *see* DOT 092.227-010.[3]

Plaintiff testified that she had worked as a teacher and her testimony did not suggest that her teaching employment presented any complex vocational issues. *See* Social Security Ruling 00-4p (2000) ("We may also use [vocational experts] at . . . steps [four and five] to resolve *complex vocational issues*.") (emphasis added). She testified at the initial ALJ hearing that she believed she could no longer teach because she is unable to "do the physical aspects, bending, lifting ….," AR at 38, however, she never presented any evidence at either that hearing or the remand hearing to indicate that her prior teaching employment involved more bending and lifting than that accounted for in the light work designation. Indeed, light work is defined by the social security regulations as including "lifting [up to] 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Thus, the Dictionary of Occupational Titles description of teaching duties and designation of teaching as light work is

---

[3] "Teaches elementary school students academic, social, and motor skills in public or private schools: Prepares course objectives and outline for course of study following curriculum guidelines or requirements of state and school. Lectures, demonstrates, and uses audiovisual teaching aids to present subject matter to class. Prepares, administers, and corrects tests, and records results. Assigns lessons, corrects papers, and hears oral presentations. Teaches rules of conduct. Maintains order in classroom and on playground. Counsels pupils when adjustment and academic problems arise. Discusses pupils' academic and behavioral attitudes and achievements with parents. Keeps attendance and grade records as required by school. May coordinate class field trips. May teach combined grade classes. May specialize by subject taught, such as math, science, or social studies. May be required to hold state certification."

consistent with the evidence before the ALJ.  For this reason, I cannot say that the ALJ erred when he relied upon the Dictionary, rather than a vocational expert, to conclude that Plaintiff's prior work was performed at the light level.

Plaintiff further argues that the ALJ erred in not acknowledging that the Commissioner previously determined that she was not able to return to her former work as a teacher.  It is true that the Commissioner made this finding in the "initial determination" denying Benson's disability status, stating that "[a]lthough you are not able to do any of the work you have done during the past 15 years, there are other kinds of work you should be able to do."  AR at 67.  However, as Defendant correctly argues, an initial determination is not binding once the claimant seeks reconsideration of that decision.  *See* 20 C.F.R. 404.905; *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997); *Draper v. Sullivan*, 1990, 899 F.2d 1127, 1130 (11th Cir. 1990).  Because Plaintiff does not dispute that she sought reconsideration of that initial determination, she cannot now claim that she is entitled to the preclusive effect of it.  Hence, the ALJ's decision not to refer to the initial determination in his opinion does not constitute error.

### D.     Opinion of Dr. John C. Park

Finally, plaintiff alleges the ALJ erred by not adequately considering the opinion of Dr. John C. Park pursuant to 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p. The citations relied upon by Plaintiff address the weight that an ALJ should accord medical opinions. *See generally* 20 C.F.R. § 404.1527; SSR 96-2P, 1996 WL 374188 at *1 (July 2, 1996); SSR 96-5P, 1996 WL 374183 at *1 (July 2, 1996).  Here, the ALJ noted Dr. Park's comment "that the claimant had another cornea transplant on March 3, 2010 and is experiencing rejection with 20-300 acuity in the left eye." A.R. at 17.  However, according to Plaintiff, he improperly rejected

this evidence as irrelevant because Dr. Park's letter "involves a period well after the date last insured of March 31, 2009." *Id.*

Given that Dr. Park's "assessment was rendered ... [one year] after Plaintiff's date last insured", the ALJ properly deemed this evidence "too far removed from the relevant timeframe." *Centeno v. Comm'r of Soc. Sec.*, Civ. A. 09-6023 AET, 2010 WL 5068141 at *7 (D.N.J. Dec. 6, 2010). As acknowledged above, an ALJ may consider medical evidence collected after the date last insured if that evidence concerns the claimant's disability prior to that date. *See Tommas*, supra at *6. In this case, however, Dr. Park's report addressed Benson's medical status following cornea transplant surgery that took place almost one full year following her date of last insured. As such, the ALJ did not have a duty to discuss the opinion pursuant to 96-2p, 96-5p or 20 CFR 404.1527 because the opinion "could not have supplied the basis of his entitlement to disability insurance benefits." *Ortega*, 232 F. App'x at 198 (3d Cir. 2007). *Accord Thelosen v. Comm'r of Soc. Sec.*, 384 Fed.Appx. 86, 90 (3d Cir. 2010) (finding no error in ALJ's decision not to consider evidence relating to claimant's condition that was not "within the applicable insured period[.]") Therefore, I conclude that the ALJ's treatment of Dr. Park's report was not in error.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **DENIED**.

   /s/ Freda L. Wolfson
Hon. Freda L. Wolfson, U.S.D.J.

Dated: July 30, 2012